IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| GERTRUDE CRISP, | : |
| *Plaintiff*, | : Case No. 1:23-cv-273 |
| v. | : Judge Jeffery P. Hopkins |
| SCIOTO AMBULANCE DISTRICT, | : |
| *Defendant*. | : |

# OPINION AND ORDER

This is the rare sex discrimination-retaliation case where the facts are largely agreed, and the matter turns on a narrow question of law. Plaintiff Gertrude Crisp was fired from her job as a paramedic in Scioto County, Ohio after she showed a coworker's online sex solicitation profile to two other coworkers. She claims that this activity is protected under Title VII of the Civil Rights Act of 1964 and Ohio civil rights law. It is not, so Defendant's Motion for Summary Judgment (Doc. 23) will be **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. 25) **DENIED**.[1]

## I. BACKGROUND

This case centers on issues between Gertrude Crisp, the plaintiff in this action, and Joshua Gullett, her former coworker. Plaintiff Crisp and Gullet met when both worked as Emergency Medical Technicians (EMTs) at Portsmouth Ambulance, a privately owned ambulance company in Portsmouth, Ohio. Crisp Dep., Doc. 19, 32:16–19. Crisp worked

---

[1] Plaintiff Crisp initially brought a Title VII hostile work environment claim, but she abandoned that claim in her Response to Defendant's Motion for Summary Judgment. *See* Doc. 26, PageID 415.

there for approximately eight years from 2012 through 2020, *id.* at 27:25–28:3, and Gullett started working at Portsmouth Ambulance a year earlier in 2011 and has continued to work there part-time to the present. Gullett Dep., Doc. 20, 21:13–18. Gullett's wife, Crystal Gullett—whom Plaintiff Crisp knew previously, as the two grew up in the same community in Southern Ohio, Crisp Dep., Doc. 19, 39:9–12—also worked at Portsmouth Ambulance for some of the time that Crisp and Gullett overlapped there. *Id.* at 38:7–15. During Crisp's time working with Mr. Gullett at Portsmouth Ambulance, he "routinely hit on" her and made inappropriate comments, according to her deposition testimony. *Id.* at 33:1–2. Crisp further testified that she never reported Gullett's behavior at Portsmouth Ambulance because the company's culture discouraged reporting of employee misbehavior. *Id.* at 39:20–40:3.

In fall 2018, Crisp began working full-time as an EMT at the Scioto County Ambulance District, the defendant in this action. *See id.* at 58:14–59:10; Doc. 27-1, ¶ 1.[2] Mr. Gullett had worked at Scioto Ambulance District since 2014. *See* Gullett Dep., Doc. 20, 16:15–18. Shortly after Crisp started working at Scioto, she and Mr. Gullett were paired up for a shift, and he escalated his harassment of her from what he had done at Portsmouth Ambulance, according to her deposition. During that shift, he "flipped [her] backwards out of [a] recliner" and squeezed her breasts, threatened her, and "tried to stuff [her] in a trash can." Crisp Dep., Doc. 19, 106:7–107:2. Crisp told Gullett to "fucking stop" and that "if he fucking touched [her] again, that [she] would break his hand," *id.* at 106:12–107:7, then went to another area of the station and called a coworker. *Id.* at 108:10–14. Shortly thereafter, she reported the incident to the Scioto Ambulance District Board ("the Board"), and the Board

---

[2] Scioto County is in south central Ohio, at the confluence of the Scioto and Ohio rivers. It includes the cities of Portsmouth and Lucasville, Ohio. *See* Scioto County government website, sciotocountyoh.com (last accessed September 23, 2025).

2

responded by directing that Crisp and Mr. Gullett would no longer be scheduled together. *Id.* at 111:14–112:16.[3] Crisp testified that she interpreted the Board's decision as final, so she did not complain to the Board further about the incident. *Id.* at 116:9–25. Crisp further testified that she did not have any issues with Gullett at Scioto after that incident, and she never made any further complaints about him. *Id.* at 118:22–119:8. Crisp testified that she was, as promised, not scheduled with Gullett again, but Scioto disputes that claim, pointing to schedules indicating they were scheduled together, if infrequently. Doc. 27-1, ¶ 7.

Despite generally not working together directly at Scioto, Crisp and Mr. Gullett continued to have some, limited interaction in the 2018–2022 period when they both worked at Scioto. In a 2020 exchange on Facebook Messenger between Crisp and Gullett, they discussed Crisp "turn[ing] down" an advance by Gullett, and Gullett maintained that he had an agreement with his wife that he was "allowed" to sleep with other women. Gullett Dep., Doc. 20, 37:10–44:22. *See* Doc. 27-1, ¶¶ 6, 9. Another time, Crisp contacted Gullett in order to reach his father-in-law, who was organizing a Christmas charity event. Crisp Dep., Doc. 19, 85:23–86:6.

That is all by way of background to the events that prompted Crisp's termination. On June 9, 2022, Crisp showed two new Scioto Ambulance District employees—Marissa Campbell and Sandra Thacker—a profile that Gullet maintained on the website Fetlife.com, a sex-solicitation site that Gullet and his wife, Crystal Gullet, used to seek sexual partners. Gullett Dep., Doc. 20, 49:11–50:5.[4] The profile included several pictures of himself, as well

---

[3] Mr. Gullett testified that he had no recollection of this incident. Gullett Dep., Doc. 20, 35:13–23.

[4] As of the date of Mr. Gullett's deposition, he had taken down his profile on fetlife.com, but Ms. Gullett continued to maintain her profile. Gullett Dep., Doc. 20, 59:17–23.

3

as pictures of his wife, and pictures of his erect penis. *See id.* 58:15–59:13; Lutz Dep., Doc. 21, 100:20–101:10. Crisp showed the profile to Campbell and Thacker while the three were on duty. Crisp Dep., Doc. 19, 145:7–9. Per Crisp's deposition, Mr. Gullett had maintained the profile since at least 2018, and she had shown it to two other employees in 2018, shortly after she made her 2018 complaint about Mr. Gullett. *Id.* at 146:1–16.[5] As to why she showed the profile to Campbell and Thacker, she testified that she did so to warn them about sexual harassment by Mr. Gullett. *Id.* at 158:16–24. In addition to showing them the profile, she also informed them of other things about Mr. Gullett she thought relevant, including the 2018 incident when he harassed her, that he had had sexual relationships with coworkers at Portsmouth Ambulance, and that he had a child with his wife's cousin. *Id.*

Mr. Gullett found out from Thacker that that she had been shown the pictures of him from Fetlife.com and reported to his squad chief at Scioto Ambulance District, Tim Jones, that Crisp was showing coworkers nude photos of him; he did not mention that the photos were from the Fetlife.com website. Gullett Dep., Doc. 20, 73:17–74:16. Mr. Jones passed on the report to Eric Lutz, a Scioto Ambulance District board member, who conducted an investigation. Lutz Dep., Doc. 21, 29:19–31:16.

The details—including that the photos were from Fetlife.com—came out in Lutz's investigation, which he undertook shortly after receiving the report. In his report, Lutz summarized his interview with Crisp as follows:

> She [Crisp] stated without reservation and without apology that she had shown nude photos of co-worker Josh Gullett to other employees while on duty and while on premises. Her reported reason for doing so was that (paraphrased) She (Ms. Crisp) did show the nude photos of Mr. Gullett to the other employees to "warn" them about "perverted and predatory" men in EMS, that there is a "list" of males in EMS who act

---

[5] Crisp initially found out about the profile from a coworker at Portsmouth Ambulance. Crisp Dep., Doc. 19, 50:20–25.

> inappropriately toward other women in EMS, that those men may make professionally inappropriate statements or make inappropriate requests of them . . . . In short, it is Ms. Crisp's contention that she showed the photos with the legitimate intention of "warning" the other employees about alleged and potential male behavior, and that this nude photo somehow "showed a pattern of behavior," justified, and verified her allegations about the other employees.

Lutz Ex., Bates No. SAD000011.[6]

Lutz further noted that Crisp accused Mr. Gullett of making a lewd comment to Thacker, but Thacker did not corroborate that accusation. *Id.* Lutz concluded the report by stating:

> Showing these photos while on duty, regardless of justification, is inappropriate and unprofessional. . . Her actions increase the potential for undesirable work environments and disagreeable work relationships at [Scioto Ambulance District]. Further, spreading rumors among employees about another staff member being "perverted" or "being a predator" are inflammatory and unprofessional. Furthermore, there have been no reports or accusations of any employee engaging in this type of behavior while on duty or with other employees at any time.

*Id.*, Bates No. SAD000012.

Lutz then shared his findings with the full Scioto Ambulance District Board, which decided unanimously on June 30 to terminate Crisp for violations of company policy involving employee obligations to maintain good behavior and refrain from "immoral conduct". *Id.*; Lutz Dep., Doc. 21, 110:8–12, 115:6–7. Further explaining the board's decision, Lutz in his deposition said showing the photos "kind of out of the blue to brand-new people that can poison them in their career here at our agency and also poison the folks that they have to work with on a daily basis, it puts forth an immediate bad perception of them. . . That person has been showing nude photographs on the premises in an otherwise professional organization, so I think it's egregious enough to warrant removal." *Id.* at 116:7–

---

[6] Deposition exhibits were filed manually with the Court due to images included in these exhibits.

117:4. Lutz also observed that there was no express company policy prohibiting Mr. Gullett and Ms. Gullett from maintaining the Fetlife.com profiles for their personal, off-duty use. *Id.* at 117:10–21.

The board sent Plaintiff Crisp a termination letter on July 3, 2022, which notified her that she had an opportunity to appeal her termination. Doc. 23-2, ¶ 5. Crisp opted to appeal, but did not present any evidence or testimony at her appeal hearing. *See* Doc. 23-2, ¶ 8; Doc. 26-1, ¶ 8.

Crisp filed the instant action on May 8, 2023, asserting claims against Defendant for maintaining a sexually hostile work environment (Counts 1 and 3) and retaliating against her for protected activity (Counts 2 and 4), in violation of Title VII and the Ohio Civil Rights Act. Doc. 1.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if, viewing the facts in the light most favorable to the non-moving party, "no genuine dispute of material fact exists" and that party is "entitled to judgment as a matter of law." *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield*, 146 F.4th 496, 505 (6th Cir. 2025) (*citing* Fed. R. Civ. P. 56(a) *and Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986)). "A genuine dispute of fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' . . . The movant bears the initial burden of showing no dispute of material fact. . . . If successful, the burden shifts to the non-movant to present facts showing a genuine issue exists for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) *and citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## III.  LAW AND ANALYSIS

6

As noted, Crisp has conceded her hostile work environment claims. Her only remaining claims, then, are her claim for retaliation under Title VII of the Civil Rights Act of 1964 (Count 2), and her claim for retaliation under the Ohio Civil Rights Act (Count 4). Compl., Doc. 1, ¶¶ 35–41, 48–50. The standards for proving sex discrimination-retaliation under Ohio law are the same as under Title VII, so the Court will analyze her retaliation claim under Title VII and need not separately analyze that claim under the Ohio Civil Rights Act. *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) (*citing Ohio Civ. Rights Comm'n v. David Richard Ingram, D.C.*, 69 Ohio St. 3d 89, 95 (1994)). The Court proceeds to its Title VII analysis.

"Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014). The so-called "opposition clause" of Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title." 42 U.S.C. § 2000e-3(a).[7]

The elements of a Title VII retaliation claim are "similar but distinct from those of a discrimination claim." *Laster*, 746 F.3d at 730. Those elements are: "(1) [Plaintiff] engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Id.* (*quoting Jones v. Johanns*, 264 F.App'x 463, 466 (6th Cir. 2007)).

---

[7] Title VII also makes it unlawful for an employer to discriminate against an employee because that employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

The Court begins with the first element, and because Crisp fails to satisfy this requirement, may stop there. As to protected activity, the parties agree that Crisp was terminated because she showed other employees Gullett's Fetlife.com profile, *see* Doc. 23-2, ¶¶ 4–5; Doc. 26-1, ¶¶ 4–5, but they disagree over whether this qualifies as protected activity. *See* Doc. 23, PageID 331; Doc. 26, PageID 417–18. The Court agrees with Defendant that this does not qualify as protected activity.

For purposes of Title VII, protected activity is: "opposing any practice that the employee reasonably believes to be a violation of Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). There are at least two sub-requirements here. First, the employee must have *opposed* a purportedly discriminatory practice. *See Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020) ("For a plaintiff to demonstrate a qualifying protected activity, he must show that he took an *overt stand* against suspected illegal discriminatory action.") (citation and internal quotation marks omitted) (emphasis added). Second, the employee's belief that the practice at issue violated Title VII must be *reasonable*. *Johnson*, 215 F.3d at 579. So long as these requirements are met, it is not dispositive "to whom the complaint is made known – i.e., the complaint may be made by anyone and it may be made to a co-worker, newspaper reporter, or anyone else about alleged discrimination against oneself or others." *Id.* at 580.

Here, the conversation at issue involved Crisp showing Gullett's Fetlife.com profile to other employees in order to "'warn' them about 'perverted and predatory' men in EMS," and about Gullett in particular. Lutz Ex., Bates No. SAD000011. Crisp, indeed, characterizes her purported protected activity as "warning her coworkers about sexual harassment from a coworker." Doc. 26, PageID 418. She has produced no evidence to indicate that she showed

8

her coworkers Gullett's Fetlife.com profile in the process of complaining to them about Scioto Ambulance District's decision to retain Gullett despite her concerns about his behavior. Instead, Crisp showed them the profile to "warn" them about Gullett. This was not an "overt stand against suspected illegal discriminatory action" by Scioto Ambulance District, *Khalaf*, 973 F.3d at 489, as Crisp was not in any way advocating for a change in any policy or practice being exhibited by Scioto Ambulance District. To the extent she was *opposing* any activity, it was that of Gullett, not their employer.

To be sure, "[t]here is little question that reporting alleged sexual misconduct in the workplace is a protected activity under Title VII." *Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-cv-555, 2020 U.S. Dist. LEXIS 67765, *15 (S.D. Ohio Apr. 17, 2020). Crisp's statements to Campbell and Thacker about Mr. Gullett did not, however, amount to reporting sexual misconduct, as they were made to co-workers and did not advocate for any particular action by Scioto Ambulance District. Instead, her reporting was intended to encourage her coworkers—not Scioto Ambulance—to take particular action, such as avoiding Gullett and being on-guard against his advances.

No relevant authority points to a contrary conclusion. Crisp points to *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000), which supports the broad proposition that "complaining to other employees can qualify as protected activity." *Jones v. Fluor Facility & Plant Servs.*, No. 24-5249, 2025 U.S. App. LEXIS 5335, *39 (6th Cir. Mar. 5, 2025) (unpublished) (citing *Johnson*, 215 F.3d at 579). But the complaint must nonetheless be an "overt stand" against a practice of the employer. *Khalaf*, 973 F.3d at 489. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 284 (4th Cir. 2015) notes that an employee may be protected from retaliation for opposing even an "isolated incident of harassment," but it, too, involved

9

overt opposition to a purportedly discriminatory practice. That case involved complaints to an employer about another employee's harassment and the employer's toleration of that harassment. *See id.* at 269–71. It was not the "warning" to coworkers, Doc. 26, PageID 418, at issue here. The citation to *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008 (9th Cir. 1983), is also unavailing, as it, too, involved advocacy by employees, directed at their employer, endeavoring to convince the *employer* to change its practices. [8]

The Court further notes that while the category of protected activity for purposes of Title VII is not tightly constrained, it also is not unlimited. *See, e.g., Kopmar v. Ass'n of Legal Aid Attys.*, 24-cv-5158, 2025 U.S. Dist. LEXIS 134446, *10 (S.D.N.Y. July 15, 2025) ("Even complaints that involve the rights and interests of individuals based on protected identity attributes do not constitute protected activity for purposes of a retaliation claim if they do not involve allegations of unlawful discrimination."); *Saliard v. Bellsouth Telecomms. LLC*, No. 1:25-cv-102, 2025 U.S. Dist. LEXIS 74852, *23 (N.D. Ga. Apr. 18, 2025) (rejecting Title VII retaliation claim where there were "no facts . . . suggesting plaintiff reasonably believed he reported a Title VII violation.").

To summarize, it would stretch the facts of this case too far to conclude that by showing other employees Gullett's Fetlife.com profile in the course of warning them about

---

[8] *Jackson v. Genesee County Rd. Comm'n*, 999 F.3d 333 (6th Cir. 2021) also involved an effort by an employee to change company policy or practices. The same is true of *NLRB v. Thor Power Tool Co.*, 351 F.2d 584 (7th Cir. 1965).

*Excel Corp. v. Bosley*, 165 F.3d 635, 638 (8th Cir. 1999) is closer to the mark factually, as it involved an interpersonal conflict between two employees that resulted eventually in plaintiff's termination. That case involved hostile work environment and sex-discriminatory termination claims, *id.* at 638, rather than retaliation claims, so it does not shed light on the key legal question: whether Crisp's statements to her co-workers qualify as protected activity for a retaliation claim.


possible sexual harassment by him,[9] she was "opposing a[] practice," 42 U.S.C. § 2000e-3(a), of the Scioto County Ambulance District. Further, nothing in the record before the Court suggests that Scioto Ambulance District ignored Crisp's complaints about Gullet at the relevant time period, given that Crisp chose to make those complaints to coworkers, not to their employer. For these reasons, Defendant is entitled to summary judgment on Crisp's retaliation claims (Counts II and IV).

## IV. CONCLUSION

Defendant Scioto Ambulance District's Motion for Summary Judgment (Doc. 23) is **GRANTED** and Plaintiff Crisp's Motion for Summary Judgment (Doc. 25) is **DENIED**. The Clerk is directed to enter judgment for Scioto Ambulance District and terminate this matter from the docket.

**IT IS SO ORDERED.**

September 30, 2025

Jeffery P. Hopkins
United States District Judge

---

[9] The parties have not directed the Court to a case, nor has the Court identified one independently, where warnings about a co-worker—like the ones at issue here—were found to be Title VII-protected activity.